## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MATTHEW S. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 22-cv-03169 |
| | ) | |
| KILOLO KIJAKAZI, Commissioner of | ) | |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

**KAREN L. McNAUGHT, United States Magistrate Judge:**

Before the undersigned Magistrate Judge is action of plaintiff, Matthew S. ("plaintiff"), for judicial review pursuant to 42 U.S.C. §405(g).[1] On appeal, plaintiff seeks remand of the decision of the Administrative Law Judge ("ALJ") who denied claims for benefits under the Social Security Act ("Act"). (Docs. 1, 10). In response, Commissioner of Social Security Kilolo Kijakazi ("Commissioner") moves for affirmance of the decision and dismissal of the complaint. (Docs. 8, 14). For the reasons stated below, this Court hereby recommends: (1) the decision of the ALJ be AFFIRMED; and (2) judgment be entered in favor of the Commissioner.[2]

### I.    BACKGROUND

On March 13, 2019, plaintiff submitted a Title II application for a period of

---

[1]*See* 42 U.S.C. § 405(g) (affording the court "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

[2]References to the pages within the Administrative Record will be identified by R. [page number]. The Administrative Record appears at Docket Entry 9 [Doc. 9].

disability and disability insurance benefits. (R. 336-342). On May 21, 2019, plaintiff filed a Title XVI application for supplemental security income. (R. 343-348). The Title XVI application was subsequently filed with abbreviations on May 24, 2019. (R. 349-358). In both the Title II and Title XVI applications, plaintiff claims disability resulting from severe physical and mental impairments—submitting a period of disability beginning March 7, 2019. (R. 44, 336, 350).

At the alleged onset date of disability, plaintiff presents as a 35-year-old male with a GED. (R. 44, 336, 1084). He moves around frequently, submitting he has lived with his stepsister, mother, aunts, grandparents, stepparents, and friends. (R. 41-43). In his function report, plaintiff alleges his degenerative disc condition limits his ability to lift, squat, bend, stand, walk, sit, kneel, climb, and complete tasks. (R. 418, 423). He can sit for a maximum of 60-90 minutes due to his back pain. (R. 428). His back pain has interrupted his hobbies; he is unable to fish, hunt, and do household chores as he used to do. (R. 419-20). He leaves the house for up to an hour a day, traveling unaccompanied by foot and car. (R. 421). He has difficulty getting along with others, noting he lost his job as a result and argues with his wife "due to his inability to do things." (R. 423). Plaintiff's past work experience includes roles as a fast-food cook, meat cutter, extruder operator, and painter. (R. 429-434).

Plaintiff's applications were initially denied on May 13, 2019, and upon reconsideration on October 1, 2019—resulting in a finding of "not disabled." (R. 156-60, 163-66). At both levels of medical evaluation, the State Disability Determination Services ("DDS") physicians found plaintiff suffered from a severe spine disorder, but DDS

psychiatrists found his anxiety and depressive disorders as non-severe. (R. 119, 133, 148).

In consideration of his physical impairments, the DDS physicians made consistent findings as to postural limitations at both stages of review—limiting some abilities to *frequently* (climbing ramps/stairs, kneeling, and crouching), *occasionally* (climbing ladders/ropes/scaffolds and stooping), and *unlimited* (balancing). (R. 122, 136, 151). In consideration of his mental impairments, DDS psychiatrists made consistent findings as to mild limitations in plaintiff's ability to: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; and (4) adapt or manage himself. (R. 119-20, 133).

Upon written request for appeal of the DDS decision, the reviewing ALJ held a telephonic hearing on August 12, 2020, where plaintiff provided testimony. (R. 35-65). Thereafter, a request for medical interrogatories were sent to impartial expert Collette Valette, Ph.D ("Dr. Valette") who responded to the same; Dr. Valette's responses were proffered to plaintiff, through his representative (Courtney A. Hilts), who again requested a supplemental hearing to cross examine Dr. Valette. (R. 533-36, 572-74, 1105-1126). The supplemental hearing was held on March 16, 2021, when Dr. Valette testified. (R. 68-98).

Following the first supplemental hearing, a request for vocational interrogatories was sent to impartial vocational expert ("VE") Delores Gonzalez, who responded; the VE's responses were also proffered to the claimant through his representative, who again requested another supplemental hearing to cross-examine the VE. (R. 575-92). Accordingly, a second supplemental hearing was held on September 14, 2021, and Ms.

Gonzalez testified. (R. 99-113).

On November 30, 2021, the ALJ issued an unfavorable decision—concluding plaintiff was not disabled for purposes of either his Title II or Title XVI applications. (R. 13-31). As the ALJ outlines at the outset of her decision, the issues are narrow in scope:

> The issue is whether claimant is disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the [Act]. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.
>
> With respect to the claim for a period of disability and disability insurance benefits, there is an additional issue whether the insured status requirements of sections 216(i) and 223 of the [Act] are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2024. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

(R. 14). Next, the ALJ approaches the five-step sequential evaluation process as enumerated under the Act. (R. 14-15, *citing* 20 C.F.R §§404.1520; 416.920).

At step one, the ALJ found plaintiff meets the insured status requirements of the Act through December 31, 2024, and has not engaged in substantial gainful activity since March 7, 2019, the alleged onset date. (R. 16, *citing* 20 C.F.R. §§404.1571; 416.971).

At step two, the ALJ determined plaintiff suffers from the following severe impairments: (1) mild degenerative disc disease; and (2) affective disorder (variously diagnosed as major depressive disorder and adjustment disorder). (R. 16, *citing* 20 C.F.R. §§404.1520(c); 404.1522; 416.920(c); 416.922; SRR 85-28; 16-3p).

At step three, the ALJ determined plaintiff's impairments (both individually and

in combination) did not meet or medically equal the severity of one of the listed impairments under C.F.R. 20 Part 404, Subpart P, Appendix 1—also considering whether "paragraph B" criteria were satisfied. (R. 17-20, *citing* 20 C.F.R.§§404.1520(d); 404.1525; 404.1526; 416.920(d); 416.925; and 416.926). The ALJ found no more than mild or moderate limitations. *Id*.

At step four, the ALJ found plaintiff had the RFC to perform "medium work" as defined under 20 C.F.R. §§ 404.1567(c) and 416.967(c)—finding he can:

> learn, remember, and carry out simple, routine tasks; use reason and judgment to make simple, routine work-related decisions; work at an appropriate and consistent pace while performing simple, routine tasks; complete simple, routine tasks in a timely manner; ignore or avoid distractions while performing simple, routine tasks; adapt to gradual changes in job setting and duties; work in close proximity to small groups of others without interrupting or distracting them while performing simple, routine tasks but cannot perform tandem tasks, such as assembly line work; sustain an ordinary routine and regular attendance at work while performing simple, routine tasks; work a full day without needing more than the allotted number or length of rest periods during the day while performing simple, routine tasks; and, appropriately interact with the public, co-workers and supervisors but no job tasks should involve adversarial activities, such as addressing customer complaints. Further, the claimant should avoid strict production pace requirements (using end of workday measurements) and should have no direct interaction with the public (the public may be present, but no job tasks should require more than minimal interaction). He is able to have casual and infrequent interaction with co-workers (including no tandem tasks, as noted above) and after the initial training and/or probationary period, occasional interaction with supervisors.

(R. 21). In making the RFC determination, the ALJ highlighted her consideration of all symptoms and the extent to which those symptoms could reasonably be accepted as consistent with objective medical evidence and other evidence—inclusive of medical opinions and prior administrative medical findings. (R. 21-24, *citing* 20 C.F.R.

§§404.1520(c); 404.1529; 404.920(c); 416.929; and SSR 16-3p).

At step 5, in consideration of RFC, age, education, and work experience, the ALJ concluded plaintiff can perform other jobs existing in significant numbers in the national economy. (R. 24-25, *citing* C.F.R. 20 §§404.1569; 404.1569(a); 416.969; 416.969(a)). The ALJ cites the VE's testimony in support of her determination—noting plaintiff would be able to perform the requirements of several representative occupations, including: (1) *Housekeeping Cleaner* (DOT 323.687-014), approximately 193,895 jobs available nationally; (2) *Photocopying Machine Operator* (DOT 207.685-014), approximately 8715 jobs available nationally; and (3) *Price Marker* (DOT 209.587-034), approximately 121,229 jobs available nationally. (R. 25).

In concluding her sequential analysis, the ALJ affirmed the previous DDS administrative findings of "not disabled" as appropriate under the Act. (R. 26). On July 15, 2022, the Appeals Counsel adopted the ALJ's findings. (R. 1-3, 13-16).

## II.    LEGAL STANDARDS

### A.  Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. Judicial review of an ALJ's decision is governed by 42 U.S.C. §405(g)—providing "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The court's review is, therefore, limited in scope—evaluating whether the ALJ applied the correct legal standards and whether substantial evidence supports the ALJ's findings. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011).

Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill,* ___ U . S. ___, ___; 139 S.Ct. 1148, 1154 (2019), *quoting Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1983). The reviewing court must consider the entire administrative record, but it will not "re-weigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *McKinzey v. Astrue*, 641 F.3d 884, 889 (7th Cir. 2011). This Court will "conduct a critical review of the evidence" and will not let the Commissioner's decision stand "if it lacks evidentiary support or an adequate discussion of the issues." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

The Court focuses on whether the ALJ has articulated "an accurate and logical bridge" from the evidence to the determination. *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). At a minimum, the ALJ must "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered the important evidence ... [and to enable] us to trace the path of the ALJ's reasoning.'" *Carlson v. Shalala,* 999 F.2d 180, 181 (7th Cir. 1993) (per curiam), *quoting Stephens v. Heckler,* 766 F.2d 284, 287 (7th Cir. 1985) (internal quotations omitted).

This requirement is designed to allow a reviewing court to "assess the validity of the agency's ultimate findings and afford a claimant meaningful judicial review." *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002). Thus, even if reasonable minds could differ as to whether the claimant is disabled, courts will affirm a decision if the ALJ's opinion is adequately explained and supported by substantial evidence. *Elder v. Astrue,* 529 F.3d

408, 413 (7th Cir. 2008).

**B.  Standard of Proof**

The regulations governing disability determinations under Titles II and XVI of the Act are identical in nearly all respects. *See generally* 20 C.F.R. §§404.1501; 416.901 (outlining statutory scope). To qualify for benefits under Title II and Title XVI applications, a claimant must be "disabled" under the Act. A person is disabled for this purpose if "he or she has an inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §423(d)(1)(A).

In determining whether a claimant is disabled, the ALJ must consider the following five-step inquiry: "(1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform past relevant work; and (5) whether the claimant is capable of performing any work in the national economy." *Dixon,* 270 F.3d at 1176 (listing requirements as set forth under C.F.R. §§404.1520 and 416.920).

Although the claimant has the burden of establishing a disability at steps one through four, the burden shifts to the Commissioner at step five to show "the claimant is capable of performing work in the national economy." *Zurawski v. Halter*, 245 F.3d 881, 885–86 (7th Cir. 2001). If the claimant can perform other work, he is not disabled. If the

claimant cannot perform other work and meets the duration requirement, he is disabled. 20 C.F.R. §§404.1512, 404.1560(c); 416.912; 416.960(c).

## III.    ANALYSIS

In substantive briefing of the issues, plaintiff presents four (4) arguments in support of remand: (1) the ALJ denied his due process rights to a full and fair hearing; (2) the ALJ did not properly analyze the medical opinion and source statements of his treating psychiatrist; (3) the ALJ should have included intermittent explosive disorder ("IED") as a severe medical impairment; and (4) the ALJ's RFC determination was not supported by substantial evidence in the record. (Doc. 10 at 11-12).

In response, the Commissioner contends the disability determination should be affirmed and indicates the analysis of the ALJ reasonably relied upon substantial evidence in the case record. (Doc. 14 at 2-13). Further, the Commissioner submits many of plaintiff's arguments improperly request the Court to reweigh evidence—providing an independent basis to affirm. (Doc. 14 at 12-19). In reply, plaintiff reiterates his arguments and places emphasis upon the ALJ's purported neglect of the opinion of plaintiff's treating psychiatrist.  (Doc. 15 at 1-2).

In the following discussion, the Court evaluates each of plaintiff's arguments in turn, but finds no adequate basis in support of remand.

### A. The ALJ provided a full and fair hearing consistent with Plaintiff's due process rights

Plaintiff first argues the ALJ did not provide a full and fair hearing in violation of his due process rights—alleging: (1) the ALJ's reliance upon a medical expert with a

history of discipline for professional negligence was improper; and (2) the ALJ improperly held a pre-conceived bias against those who use marijuana. (Doc. 10 at 12-13).

### i.    Dr. Valette's Disciplinary Record

As an initial matter, plaintiff's argument related to Dr. Valette's disciplinary history is, at best, under-developed. In this pursuit of remand on this basis, plaintiff does not appear to dispute the consistency of Dr. Valette's opinion on any *specific* substantive basis; rather, he questions the ability of Dr. Valette to testify whatsoever—arguing the existence of prior disciplinary action renders her unable to testify as a medical expert in this case, or in any Agency case. (Doc. 10 at 12).

However, plaintiff neglects to cite to any case law, regulation, or agency policy in support of this position. *See Crespo v. Colvin*, 824 F.3d 667, 674 (7th Cir. 2016) (finding arguments waived when unsupported by pertinent authority). The existence of the disciplinary record itself, for which this Court is unable to independently verify as an official record, does not appear to relate to or adequately impeach the substance of Dr. Valette's medical opinion in this case. (R. 623-27). Plaintiff merely points to the existence of the disciplinary record in a conclusory manner, failing to address the substantive bearing on whether the ALJ's decision would have been impacted, and why, had the document been apart of the record at the hearing stage. (Doc. 10 at 21). This is consistent with plaintiff's omission of any substantive argument made at the appellate counsel level of administrative review—further suggesting waiver of this undeveloped argument. (R. 617-27).

Furthermore, upon review of the details within the disciplinary record, there is no indication Dr. Valette's opinion would have been evaluated any differently by the ALJ had she had access to the record at the hearing stage. *Schomas v. Colvin*, 732 F. 3d 702, 708 (7th Cir 2013) (the Seventh Circuit "will not remand a case to the ALJ for further explanation if we can predict with great confidence that the result on remand would be the same."). The disciplinary record does not indicate Dr. Valette's licensure was imperiled, nor does the record indicate suspension; rather, the extent of disciplinary action in this record consists of mere admonishment, a mandate to complete continuing education courses, and subsequent professional evaluations. (R. 623-627, 1116-18).

The disciplinary history of Dr. Valette does not appear to affect her ability to substantively testify to plaintiff's disability status in this case. The Court finds the argument undeveloped. *See Schoenfeld v. Apfel*, 237 F.3d 788, 793 (7th Cir. 2001) (holding "time and again that perfunctory and undeveloped arguments (even constitutional ones) are waived."). Due process arguments on this point are, therefore, foreclosed for want of a developed argument.

However, even if the Court were to assume Dr. Valette's disciplinary record substantively harmed her credibility in front of the ALJ, the timing of the disclosure of disciplinary record remains problematic. Plaintiff had at least one year between receipt of Dr. Valette's response to interrogatories (October 2020) and the ALJ's decision (November 2021)—providing ample time to discover the existence of these records prior to the issuance of the ALJ's disability determination. (R. 13-26, 99, 533, 1116-1128).

Upon receipt of this information, plaintiff had the opportunity to develop a theory of his case, including his cross-examination and impeachment strategy as to Dr. Valette's opinions. Indeed, plaintiff's counsel questioned Dr. Valette at length at the March 16, 2021, hearing and attempted to effectuate an impeachment strategy upon cross-examination. (R. 71-96). Ultimately, plaintiff held the burden to prove his disability, and the ALJ found his position unpersuasive in contrast to the available medical evidence. *See* 20 C.F.R. § 404.1512; *see also Prill v. Kijakazi*, 23 F. 4th 738, 746 (7th Cir. 2022) (affirming claimant's burden to prove disability).

Dr. Valette provided a detailed assessment in her medical opinion and responded to questions at the March 16, 2021, hearing consistent "with the totality of the medical evidence, including a lack of objective documentation of angry outbursts and/or incidents violating the rights of others." (R. 19, 23). Fundamental to her role as an administrative adjudicator, the ALJ is afforded deference in her attribution of persuasive weight to expert medical opinions. *White v. Barnhart*, 415 F.3d 654, 659-60 (7th Cir. 2005) (affording the ALJ with discretion to rely upon persuasive medical expert testimony).

For the reasons stated above, there is no indication of a due process violation on this point. Instead of providing substantive argument on the bearing of this record, plaintiff neglects to argue why this disciplinary record substantively disqualifies Dr. Valette from testifying as an expert in this specific case. The mere existence of the record is simply insufficient absent adjoining argument. Remand on this due process consideration is, therefore, unwarranted.

ii.    **Allegations of Pre-Conceived Bias**

Also grounded in principles of due process, plaintiff argues his right to a full and fair hearing of his claims were undercut by the ALJ's pre-conceived bias against marijuana use. (Doc. 10 at 13). In her decision, the ALJ found plaintiff's consumption of ninety percent (90%) THC concentrate may be attributable to some of his symptoms and was inconsistent with federally recognized medicinal standards for purposes of treatment:

> As for adapting or managing oneself, the claimant has experienced a mild to moderate limitation. Of note, although the claimant reported seeing things at times (Exhibit 2F), he denied hallucinations on various other occasions and importantly, this symptom is consistent with the use of THC wax (which the claimant relayed he uses) which is 90% concentrated THC and can cause extreme hallucinations and trigger mood disorders. The claimant testified he uses marijuana recreationally (and also implied he would be prescribed medical marijuana but did not need a prescription, given it was legal in his state of Illinois), but the Agency's regulations do not recognize marijuana as treatment regardless. Further, the form of marijuana the claimant uses is highly concentrated, and inconsistent with medicinal purposes.

(R. 18). Although unclear, plaintiff appears to suggest the legality of his marijuana use in the Illinois undermines the analysis of the ALJ—proposing the ALJ's domicile of Missouri (where recreational marijuana use remains illegal) undermines her neutrality. (Doc. 10 at 13, *citing* R. 90-91, 95). Plaintiff highlights the statements of the ALJ at the hearing in support of his claim, arguing the ALJ "trampled" on his right to due process because of her personal feelings on marijuana use. *Id.*

Plaintiff's due process argument on this ground is barred as a matter of law. Under general principles of supremacy and jurisdiction, the ALJ's duty conforms to federal law,

not state law. Despite state statutory schemes of legalization or decriminalization, marijuana remains generally prohibited under federal law for recreational and medicinal purposes. *See* 21 U.S.C. § 812 (indicating that, under federal law, marijuana has a high potential for abuse and has no currently accepted medical use in treatment). Further, an ALJ is tasked to evaluate and understand the totality of the record in determining whether a given claimant meets or medically equals the severity of one of the listed impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1,

Here, consistent with the foregoing law and administrative guidance, the ALJ determined plaintiff's use of THC concentrate lacks federal recognition for medicinal or treatment purposes. (R. 18). The characterization by the ALJ as to the "adverse impacts of marijuana" are supported by the record. (R. 90-91, 661, 1122). The ALJ was not alone in her assessment, as the medical expert also opined as to the adverse effects of marijuana upon plaintiff's ability to function. (R. 84-85, 1122). Regardless of legality, the admission of marijuana use was ripe for the ALJ's consideration, as is consistent with her duty under 20 C.F.R. Part 404, Subpart P, Appendix 1, to evaluate the totality of the evidence in the determination of medically determinable impairments.

In summary, the waymark of the ALJ's analysis was controlled under a federal scheme, and her substantive findings were adequately supported by the case record. Thus, remand on this additional due process ground is equally unwarranted.

### B. The ALJ properly evaluated the medical opinion of the treating psychiatrist under C.F.R. §§404.1520c and 416.920c

Plaintiff also argues the ALJ failed to "properly analyze the opinion of the treating

psychiatrist" Tanya Royster, M.D. ("Dr. Royster") under C.F.R. §§404.1520c and 416.920c. (Doc. 10 at 13). In support, plaintiff alleges the ALJ gave the statements of Dr. Royster no more than a "perfunctory glance" and failed to clarify factual ambiguities within the medical source statements with the record at-large. (Doc. 10 at 14-16, *citing* R. 587, 960, 967, 991, 1031, 1071, 1075, 1079, 1084-85, 1096, 1186, 1201, 1218, 1295-97).

For purposes of Title II and Title XVI claims filed on or after March 27, 2017, the ALJ evaluates medical opinions[3] and prior administrative medical findings under the administrative guidelines set forth in C.F.R. §§404.1520c and 416.920c, respectively.[4] In evaluating a medical opinion or prior administrative medical finding, the ALJ considers several factors—including supportability, credibility, relationship with claimant, specialization, and others. *See generally* C.F.R. §§404.1520c(c); 416.920c(c). As to the attribution of persuasive weight given to particular medical opinions or prior administrative findings, the most important factors for the ALJ to consider are the *supportability* and *consistency* factors. *See* C.F.R. §§404.1520c(b)(2); 416.920c(b)(2). In support of her reliance upon particular medical opinions, the ALJ must "explain how [she] considered the supportability and consistency factors" in her evaluation. *Id.*

Under the *supportability* factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the

---

[3] *See* POMS DI 24503.005(b)(2). A medical opinion is a statement from a medical source about what a claimant "can still do despite his or her impairment(s) and whether the claimant" has one or more impairment-related limitations or restrictions" in his or her ability to perform under work demands.

[4] *See* 82 Fed. Reg. 5844, 5853 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15,132 (Mar. 27, 2017).

medical opinions or prior administrative medical finding(s) will be." *See* C.F.R. 20 §§404.1520c(c)(1); 416.920c(c)(1). Next, under the *consistency* factor, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *See* C.F.R. 20 §§404.1520c(c)(2); 416.920c(c)(2).

The ALJ may, but is not required to, address how any of the remaining factors (relationship with claimant, specialization, and others) were considered when articulating the persuasiveness of the medical opinion. *See* C.F.R. 20 §§ 404.1520c(b)(2); 404.920c(c)(5); 416.920c(b)(2); 416.920c(c)(5). The ALJ is not required to articulate how she considered evidence from nonmedical sources. *See* C.F.R. §§404.1520c(d); 416.920c(d).

Turning to the evaluation of the treating physician's medical source statements in this case, the ALJ quickly disposed of the medical source statement submitted by Dr. Royster on December 7, 2020 ("December MSS") — noting:

> In one such statement, she wrote the claimant's severe episode of recurrent major depressive disorder without psychotic features interferes with his ability to function (but did not provide any specific limitations) (Exhibit 11F). This is not a medical opinion and Dr. Royster is not qualified to give a vocational opinion (POMS DI 24503.005(b)(2)).

(R. 20, 1127-1128). Unlike the December MSS, Dr. Royster's second medical source statement — submitted on January 2, 2021 ("January MSS") — was evaluated by the ALJ as a medical opinion. (R. 20, 1294-97). In the January MSS, Dr. Royster notes how plaintiff experienced none, mild, and moderate limitations in various skills pertaining to understanding, remembering, applying information, and interacting with others. (R. 20,

1294-1297).  Dr. Royster also wrote plaintiff would miss work more than four (4) days monthly, would be off-task more than twenty-five percent (25%) of the workday, and would also require unscheduled breaks of twenty (20) minutes every two hours. (R. 1295-96).

The ALJ articulated her skepticism as to the supportability and credibility of the January MSS—finding Dr. Royster's statements "not entirely persuasive for several reasons." (R. 20). As the ALJ notes:

> Among those reasons, Dr. Royster's statement is internally inconsistent – in that she concluded the claimant was disabled as of March 7, 2019, yet she did not evaluate him until October 13, 2020 and also indicates she is not certain of the date of onset of his disability. She also wrote that she was not involved in response to a question asking about changes made to her answers if the claimant was totally abstinent from using substances; it is unclear if she means no changes, substance abuse is not involved (clearly not the case here), or that Dr. Royster is not involved in making such decisions. The statements the claimant would be absent excessively and need regular breaks every two hours are not persuasive, as there is no explanation for such limitations (other than a general citation to "anxiety, irritability and fatigue").

(R. 20). Although the ALJ found the January MSS largely unsupported and inconsistent with the record, she did find persuasive those statements by Dr. Royster noting plaintiff experiences "no more than" moderate limitations in any "paragraph B" area. (R. 20). The ALJ found those medical statements "consistent with the totality of the record – including a lack of legal involvement for problems interacting with others, and a lack of inpatient hospitalizations and/or emergency treatment for exacerbations of mental health symptoms." (R. 20).

Upon its review of the ALJ's analysis and references to the record, this Court

remains deferential to the ALJ's skepticism of Dr. Royster's medical source statements. As a matter of plain-meaning interpretation, the ALJ was correct in refusing to construe the December MSS as a persuasive "medical opinion." (R. 20, 1127-28). Although Dr. Royster documents the depressive disorder experienced by plaintiff and its generic interference with his ability to function, inadequate detail is provided as to which specific abilities are functionally limited. *See* POMS DI 24503.005(b)(2).[5]

The analysis of the ALJ as to the January MSS is consistent with the provisions of C.F.R. 20 §§404.1520c and 416.920c. Although the January MSS indicates plaintiff has various mental limitations, it would be improper to equate diagnoses in the record with functional limitations without additional objective evidence. *See Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005) (noting that equating a diagnosis with actual functional limitations requires a leap in logic).

Despite the assertions of plaintiff, there is no indication this duty was triggered as to the January MSS. It is the duty of the ALJ to assist in the development of the medical record on appeal—arranging for consultative examination, if necessary, and engaging in reasonable efforts to help the claimant obtain medical reports from their medical sources. *See* C.F.R. 20 §404.1545(a)(3); *but see Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014) (finding the ALJ's obligation to develop the record is "not limitless."); *Nelms*, 553 F.3d at 1098 (second alteration in original) (finding "a significant omission is usually required

---

[5]After the 2017 amendment, a "medical opinion" under this section must discuss a specific limitation to performance of a work demand within one or more of the following categories: (1) physical ability (sitting, standing, walking, lifting, or pulling); (2) mental ability (understanding, remembering, concentration, or persistence); (3) sensory ability (seeing, hearing, or other sense); and (4) adaptability (adjusting to environmental conditions, temperature extremes, or fumes).

before th[e] court will find that the [Commissioner] failed to assist ... claimants in developing the record fully and fairly.").

In evaluating the persuasiveness of Dr. Royster's medical opinion in the January MSS, the ALJ was tasked to evaluate the statements Dr. Royster provided (or did not) to advance the medical opinion. *See* 20 C.F.R. §§ 404.1520c(b)(1); 416.920c(b)(1). The ALJ did just that—finding the January MSS was less reliable than other evidence and medical opinion available in the case record. (R. 17-20).

The Court is not inclined to find the ALJ erred by following the administrative guidance precisely; however, even if this Court were to remand to clarify inconsistencies or ambiguities within the January MSS, the outcome of the ALJ's determination is highly unlikely to change. *Schomas v. Colvin*, 732 F. 3d at 708. Given the ALJ's high level of deference to other medical evidence and opinion in the record, it is highly unlikely additional clarifications or supplements to the medical source statements of Dr. Royster will change the result in this matter. *Mckinzey*, 641 F.3d at 892 ("[A]dministrative error may be harmless: we will not remand a case to the ALJ for further specification where we are convinced that the ALJ will reach the same result.").

Finally, plaintiff's challenge to the attribution of persuasive weight to evidence of the ALJ necessarily requires this Court to reweigh such evidence. This request is simply improper; the Court will not revisit or make determinations as to conflicting evidence or testimony. *McKinzey*, 641 F.3d at 889.

For these several reasons, the objections set forth by plaintiff to the ALJ's analysis of Dr. Royer's medical source statements under 20 C.F.R §§404.1520c and 416.920c are

foreclosed. Remand on this basis is, therefore, unwarranted.

### C.  The ALJ properly excluded IED as a medically determinable impairment

Plaintiff next contends the ALJ improperly relied upon the medical expert Dr. Valette in excluding IED as a medically determinable impairment. (Doc. 10 at 16-17). As the ALJ outlines:

> Here, the representative cross-examined the medical expert at length over whether or not the claimant had appropriately been diagnosed with IED. The representative argued in part that because multiple treating providers had provided this diagnosis, this was a valid assessment. The medical expert thoroughly explained why the claimant did not have IED. Among other reasons, Dr. Valette confidently explained that although there were subjective complaints of difficulty controlling the claimant's anger, there was a significant lack of objective evidence – such as legal trouble or clearly documented examples of the claimant violating the rights of others – to support such a diagnosis. Despite this, the claimant's difficulty interacting with others was considered in the determination of the residual functional capacity assessment below.

(R. 16-17, *citing* 20 C.F.R §§ 404.1520(c) and 416.920(c)).

As an initial matter, evidence of diagnosis in the record is not itself sufficient for the ALJ to make a finding on a medically determinable impairment. *See* 20 C.F.R. §§ 404.1521; 416.921. A medically determinable impairment requires a diagnosis supported by objective medical evidence – meaning signs, laboratory findings, or both. *See* 20 C.F.R. §§ 404.1502(f); 416.902(k); *see also Karr v. Saul*, 989 F.3d 508, 512 (7th Cir. 2021) (holding the ALJ does not owe deference to any portion of a treating physician's opinion based solely on the claimant's subjective complaints)."). These "signs" must be shown by medically acceptable clinical and diagnostic techniques; and "laboratory findings" are shown by one or more anatomical, physiological, or psychological phenomena evidenced

by medially acceptable laboratory diagnostic techniques. *See* 20 C.F.R. §§ 404.1502(c); 416.902(g).

Here, while evidence of an IED diagnosis exists in the record, no objective medical evidence supports its inclusion as a medically determinable impairment.  Plaintiff's lay interpretation of the DSM-V is sufficient to satisfy this burden. (Doc. 10 at 17). The ALJ relied upon Dr. Valette's responses and defenses to her written interrogatories—finding it persuasive that, aside from Plaintiff's own reports, the record did not "support any anger issues." (R. 20, 75).

As Dr. Valette noted, as an example, there were "no records of incarceration or the police being involved, which is usually what happens when someone has this disorder." (R. 75). In addition, Dr. Valette explained how plaintiff is described by his own medical records as "pleasant" and "cooperative." (R. 75). Dr. Valette also noted inclusion of IED requires evidence of plaintiff's "inappropriate" behavior, for which she was questioned upon cross-examination. (R. 19, 23, 76-82).

In satisfaction of the *supportability* factor under C.F.R. 20 § 404.1520c and 416.920c, Dr. Valette provided "multiple pinpoint citations to the medical evidence to support her conclusions" and "further provided detailed explanations for her conclusions upon thorough cross-examination." (R. 19). Further, in satisfaction of the *consistency* factor, the ALJ found it "important[]" that Dr. Valette's assessment was "largely consistent with the totality of the medical evidence, including a lack of objective documentation of angry outbursts and/or incidents violating the rights of others." (R. 19).

Although IED was not recognized as a medically determinable impairment, the

analysis of the ALJ confirms her consideration of several restrictions to accommodate for

plaintiff's purported difficulties with interpersonal communication—noting "the

claimant's difficulty interacting with others was considered in the determination of the

residual functional capacity assessment below." (R. 16). The ALJ subsequently considered

this evidence at step four of the sequential analysis:

> The claimant also complained of difficulty controlling his anger. His wife
> and/or mother reported the claimant was at times irritable, angered easily,
> and had problems completing tasks, or handling stress/changes in routine.
> …
> the claimant's behavior has been consistently documented as appropriate
> throughout the period in question, despite his claims that he is absolutely
> unable to control his anger and would lash out at others, causing him to be
> unable to hold down employment of any kind.

(R. 22-23). Plaintiff proffers no response to the ALJ's acknowledgment, failing to address

how  recognition of IED as a severe impairment would have resulted in a more restrictive

RFC assessment. (Doc. 10 at 16-17).

Finally, assessing the merits of this argument again requires the Court to reweigh

the evidence in the record. This is improper, as deference is owed to the ALJ's attribution

of persuasive weight to the evidence and testimony record; nor is it this Court's place to

revisit or make determinations as to conflicting evidence or testimony. *McKinzey*, 641 F.3d

at 889.

For these several reasons, the ALJ's attribution of persuasive weight upon the

opinion of Dr. Valette in the exclusion of IED was proper. The analysis of the ALJ was

grounded in substantial evidence available in the case record—consistent with Dr.

Valette's well-defended opinion and testimony. Remand on this basis is, therefore, unwarranted.

### D. The ALJ's RFC assessment was well-reasoned and supported by substantial evidence available in the case record

In his final argument, plaintiff argues the RFC assessment of the ALJ was the result of "independent medical findings" and "inferences from medical results"—suggesting the ALJ, who is not a medical professional, improperly "divine[d] from medical records" or "articulate[d] functional problems" unsupported by substantial record evidence. (Doc. 10 at 18-21). Similar to its predecessors, this argument falls short in light of the well-developed record and analysis.

Consistent with the five-step sequential evaluation, an ALJ must determine the RFC between steps three and four. *See* 20 C.F.R. §§404.1520(a)(4); 404.1520(e); 416.920(a)(4); 416.920(e). The RFC assessment measures the "individual's ability to do sustained work. *See* 20 C.F.R. §§404.1545; 404.945. The ALJ is tasked to assess the RFC "based on all of the relevant medical and other evidence." *See* 20 C.F.R. §404.1545(a).

"If your case is at the administrative law judge hearing level . . . the administrative law judge . . . is responsible for assessing your residual functional capacity." *See* 20 C.F.R. §404.1546(c); *see also* SSR 96-8p (explaining that an RFC is based on all the relevant evidence in the case record, not just the medical opinions). In other words, the RFC is the maximum a given claimant can work despite his or her physical and mental limitations or restrictions. *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022), *citing* SSR 96-8p, 61 Fed. Reg. 34474, 34475; *see also Craft v. Astrue*, 539 F.3d 668, 675-76 (7th Cir. 2008).

While an ALJ need not use any "magic words" when formulating a claimant's RFC, the assessment must incorporate all the claimant's limitations supported by the medical record, including even moderate limitations in concentration, persistence, or pace." *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019). The RFC analysis must "say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021); *see also Recha v. Saul*, 843 F. App'x 1, 4 (7th Cir. 2021) ("[A]n ALJ has some latitude with the exact wording of an RFC as long as it conveys in some way the restrictions necessary to address a claimant's limitations.")

Here, by way of analogy, plaintiff relies upon *DeCamp v. Berryhill*, 916 F.3d 671 (7th Cir. 2019) to show the ALJ's RFC did not adequately address his "moderate" limitation in the abilities of concentration, persistence, or pace. (Doc. 10 at 21). However, plaintiff fails to establish how either the law or facts are analogous to the instant case. Notably, *DeCamp* implicated the pre-amendment SSA regulations which did not expressly define "moderate" consistent with the modern scheme. *DeCamp*, 916 F.3d at 674-75.

In the modern scheme, as is controlling in the instant case, the term "moderate" means that functioning in a particular area independently, appropriately, effectively, and on a sustained basis is "fair." *See* 20 C.F.R., Part 404, Subpart P, App. 1, § 12.00.[6] Further, in *DeCamp*, the ALJ found the claimant's symptoms were not entirely credible for the following reasons:

---

[6]As defined, "fair" is generally understood to mean "sufficient but not ample" or "adequate." *See Merriam Webster's Collegiate Dictionary* 417 (10th Ed. 1996); *see also Black's Law Dictionary* (10th Ed. 2014 (defining "fair" as "reasonably good in kind, quality, or degree"); Cambridge Academic Content Dictionary (defining fair as "average: neither very good nor very bad").

First, DeCamp had decided to take a vacation after her alleged onset date. The ALJ recognized that "a vacation and a disability are not necessarily mutually exclusive," but DeCamp's willingness to travel suggested that she had overstated her symptoms. Next, DeCamp regularly walked her dog, an activity that conflicted with her reports of disabling leg pain. Third, DeCamp's appearance at her mental-status evaluations and hearings, as documented by the examining doctors, suggested that she was not as disabled as she alleged. Last, DeCamp medical records did not reflect that she had complained of pain or other disabling symptoms from her conditions.

*DeCamp*, 916 F.3d at 675.

Such a rationale is not analogous to the instant case. The foregoing summary of DeCamp's RFC rests in large part upon the daily activities and appearance of the claimant, but is not as well-developed as the ALJ's RFC assessment in this case. (R. 21-24).

In evaluation of the ALJ's RFC assessment as to concentration, persistence, or pace, this Court takes no issue with the reliance of the ALJ upon Dr. Valette's medical opinion. (R. 84, 1121). Consistent with the *supportability* and *consistency* factors, the ALJ assessed Dr. Valette's opinion, as well as the totality of the evidence—conforming her RFC with relevant administrative guidance. (R. 21-24) (satisfying 20 C.F.R. §§ 404.1520c(c)(2); 416.920c(c)(2)).

For example, the ALJ found plaintiff's mental status examinations revealed such unremarkable findings as intact concentration, normal memory, normal judgment, average intellect, normal thought processes, and normal thought content. (R. 18, 21-24, 628, 649, 654, 682, 846, 870, 944–45, 952, 957, 961, 967, 982, 987, 1006, 1011, 1022, 1027, 1044,

1085, 1170, 1174, 1178, 1182, 1189, 1197, 1203, 1209, 1214, 1220, 1227, 1231, 1300, 1305, 1311, 1321, 1327, 1333, 1350, 1355, 1372, 1378, 1403).

Further, although the ALJ acknowledged plaintiff's subjective complaints of anger, she found it relevant that he often presented to appointments with normal mood, affect, and behavior and was generally cooperative. (R. 18, 21-24, 682, 687, 695, 703, 713, 745, 758, 767, 828, 846, 870, 875, 920, 952, 967, 987, 992, 1006, 1016, 1022, 1027, 1038, 1121, 1136, 1164, 1203, 1305, 1310, 1382, 1392).

The ALJ also noted how the medications plaintiff was prescribed mitigated his symptoms—finding it telling how he did not require treatment more indicative of debilitating symptoms, such as psychiatric hospitalization. (R. 18, 23, 966.) The ALJ properly found frequency of treatment as a reasonable basis to consider when evaluating the intensity and persistence of a claimant's symptoms. *See* 20 C.F.R. §§ 404.1529(c)(3); 416.920(c)(3); *see also* SSR 16-3p ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

The ALJ also reasonably found the self-reported activities of plaintiff suggested he was not as limited as alleged. (R. 17, 18, 22-23.) Consistent with administrative guidance, the ALJ is required to consider any factor, including activities, which concerns an individual's functional limitations and restrictions due to symptoms. *See* SSR 16-3p. As admitted by plaintiff, he was able to drive, shop, and even participate in leisure activities on a weekly basis such as in his dart league. (R. 18, 944, 951, 956, 991, 1181).

Although such activities were considered in her assessment, nowhere in the RFC discussion does the ALJ equate plaintiff's daily activities of living with his ability to maintain full-time employment. *Cynthia A. v. Berryhill*, No. 4:17-4319, 2019 WL 7421964 at *6 (C.D. Ill. Feb. 8, 2019) (finding no error where ALJ considered activities of daily living, but did not equate those activities with her ability to maintain employment).

As in *Cynthia A.*, this is not a case in which the ALJ equated plaintiff's activities of daily living with an ability to maintain full-time employment. The consideration given by the ALJ to plaintiff's daily activities by way of the testimony and function report was proper as one factor in consideration of the totality of the evidence. *See Burmester*, 920 F.3d at 510; *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (finding "it is entirely permissible [for an ALJ] to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated.") (citation and internal quotation omitted).

In full consideration of Dr. Valette's expert opinion, the dearth of objective medical evidence in support of functional limitation, the nature of the treatment history, and several other factors set forth above, the ALJ reasonably assessed plaintiff's RFC. *See, e.g., Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) ("We give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'") (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667–68 (7th Cir. 2008)). The ALJ built an "accurate and logical bridge" from the record evidence to her conclusion—explaining why she was not persuaded by contrary evidence. *See Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see also Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008).

Moreover, plaintiff did not provide facts to support what should have been addressed in the RFC assessment, and the Court, therefore gives greater deference to the ALJ's analysis. *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (finding that, even if the ALJ's mental RFC assessment had contained flaws, any error was harmless, as the claimant failed to "hypothesize[]" the kinds of work restrictions that would have addressed their limitations in concentration, persistence, or pace). Notably, plaintiff fails to present further work-related limitations the ALJ allegedly neglected to include, or should have included, that provide support for those purported difficulties with concentration, persistence, and pace. (Doc. 10 at 18-21).

Consistent with several of plaintiff's arguments, his challenge to the ALJ's RFC assessment is tantamount to a request of this Court to improperly reweigh or reconsider evidence. This Court refuses to do so. Further, the Court will not supplant the findings of the ALJ with its own RFC assessment. *McKinzey*, 641 F.3d at 889.

For the several reasons outlined above, plaintiff's challenge to the adequacy of the ALJ's rationale in her RFC assessment is unfounded. Remand on this basis is, therefore, unwarranted.

## IV.    CONCLUSION

Upon review of the filings and applicable law, this Court finds the ALJ applied correct legal standards and supported her decision with substantial evidence at each of the sequential steps of her analysis. In arriving at the disability determination, the ALJ built an accurate and logical bridge from the evidence available in the record to her findings.

3:22-cv-03169-CRL-KLM    # 16    Filed: 10/11/24    Page 29 of 29

Therefore, it is hereby recommended: (1) the ALJ's decision be AFFIRMED; and

(2) judgment be entered in favor of the Commissioner.

ENTER: October 11, 2024


/s/ Karen L. McNaught
KAREN L. McNAUGHT
UNITED STATES MAGISTRATE JUDGE

Page 29 of 29